# IN THE UNITED STATES
# COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT & POWER DISTRICT<br>    Plaintiff.<br>v.<br>THE UNITED STATES OF AMERICA,<br>    Defendant. | 21-1519 C |

## COMPLAINT

Plaintiff Salt River Project Agricultural Improvement & Power District ("SRP"), through counsel, brings this action against the United States of America (the "Government" or alternatively, the "United States") for violation of Section 1531 of the American Recovery and Reinvestment Act of 2009 ("ARRA"), Pub. L. No. 111-5, 123 Stat. 115, 358-360 (2009). For its Complaint SRP alleges as follows:

## NATURE OF THE ACTION

1. This action arises as a result of the violation by the United States of its mandatory obligation to make periodic cash payments to SRP in an amount equal to 35% of the interest to be paid on bonds issued by SRP pursuant to the Build America Bonds program which is set forth in Sections 54AA and 6431 of the Internal Revenue Code, as amended by Section 1531 of ARRA ("Section 1531").

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to the Tucker Act, 28 U.S.C. § 1491 and Section 1531, a money-mandating statute, as well as the express or implied contract

between SRP and the United States and SRP's full performance of the requirements set forth in Section 1531.

## PARTIES

3.      Plaintiff SRP is a political subdivision of the State of Arizona and an agricultural improvement district organized in 1937 under the laws of the State of Arizona.   SRP owns and operates an electric system which generates, purchases, transmits and distributes electric power and energy, and provides electric service to over 1 million residential, commercial, industrial and agricultural power users in a 2,900 square mile service territory in parts of Maricopa, Gila and Pinal Counties, plus mine loads in an adjacent 2,400 square mile area in Gila and Pinal Counties.

4.      Defendant is the United States, acting through the United States Department of the Treasury ("Treasury").

## STATUTORY AND REGULATORY FRAMEWORK

5.      Congress enacted ARRA at the height of the 2009 financial crisis. Section 3(a) of ARRA states the "purposes and principles" of the statute, which are "(1) To preserve and create jobs and promote economic recovery, (2) To assist those most impacted by the recession, (3) To provide investments needed to increase economic efficiency by spurring technological advances in science and health, (4) To invest in transportation, environmental protection, and other infrastructure that will provide long-term economic benefits, and (5) To stabilize State and local government budgets, in order to minimize and avoid reductions in essential services and counterproductive state and local tax increases." 123 Stat. 115-116.

6.      The Build America Bonds ("BABs") program set forth in Section 1531 was enacted to encourage the issuance, sale and purchase of state, municipal, and county bonds to finance much-needed capital investments. It did so in two ways, each designed to lower the cost of

borrowing for state and local governments. The first method, known as "tax credit BABs," entitles bond holders to offset their federal tax liability with a tax credit of 35 percent of the interest received on Build America Bonds. The second way, known as "direct payment BABs," entitles bond issuers to a periodic cash payment from Treasury equal to 35 percent of the periodic interest payments made on the Build America Bonds issued in conformance with the provisions of Section 1531. Direct payment BABs issued by SRP in conformance with the provisions of Section 1531, are the subject of this lawsuit.

7.  Both tax credit BABs and direct payment BABs must satisfy three requirements: (1) the bond must be a State or local bond, interest on which would otherwise be excludable from gross income under Section 103 of the Internal Revenue Code; (2) the bond must have been issued before January 1, 2011; and (3) the issuer must have made an irrevocable election to designate the bond as a Build America Bond. 123 Stat. 358.

8.  Direct payment BABs, which are referred to in Section 1531 as "qualified bonds," are subject to two additional requirements: (1) the proceeds of the bond must have been used for capital expenditures; and (2) the issuer must have made an irrevocable election to. accept direct payments in lieu of tax credits to the bond holders. 123 Stat. 359.

9.  By enacting the BABs program set forth in Section 1531, Congress created a "money-mandating obligation" for the Government which is evidenced by the use of mandatory language in the statute.

10. Section 3(b) of ARRA mandates that "[t]he President and the heads of Federal departments and agencies *shall* manage and expend the funds made available in this Act so as to achieve the purposes specified in subsection (a) . . .." 123 Stat. 116 (emphasis added).

11. With respect to tax credit BABs, Section 54AA(a) of the Internal Revenue Code, as amended by Section 1531, mandates that "[i]f a taxpayer holds a build America bond on one or more interest payment dates of the bond during any taxable year, there *shall* be allowed as a credit against the tax imposed by this chapter for the taxable year an amount equal to the sum of the credits determined under subsection (b) with respect to such dates." 123 Stat. 358 (emphasis added). Section 54AA(b) of the Internal Revenue Code mandates that "[t]he amount of the credit determined under this subsection with respect to any interest payment date for a build America bond is 35 percent of the amount of interest payable by the issuer with respect to such date." 123 Stat. 358.

12. With respect to direct payment BABs, Section 54AA(g)(1) of the Internal Revenue Code, as amended by Section 1531, mandates that "[i]n lieu of any credit allowed under this section with respect to such bond, the issuer of such bond *shall* be allowed a credit as provided in Section 6431." 123 Stat 359 (emphasis added).

13. Section 6431(a) of the Internal Revenue Code, as amended by Section 1531, mandates that "[i]n the case of a qualified bond issued before January 1, 2011, the issuer of such bond *shall* be allowed a credit with respect to each interest payment under such bond which *shall* be payable by the Secretary as provided in subsection (b)." 123 Stat. 359-360 (emphasis added).

14. Section 6431(b) of the Internal Revenue Code, as amended by Section 1531, mandates that "[t]he Secretary *shall* pay (contemporaneously with each interest payment date under such bond) to the issuer of such bond (or to any person who makes such interest payments on behalf of the issuer) 35 percent of the interest payable under such bond on such date." 123 Stat. 359-360 (emphasis added).

15. ARRA and its BABs program created a money-mandating obligation because Congress did not simultaneously appropriate funds for the BABs program when it enacted ARRA.

16. The "Appropriations Provisions" of ARRA are found in Division A of that statute. Those provisions do not address the BABs program and thus do not apply to the BABs program, which is created in Division B, "Tax, Unemployment, Health, State Fiscal Relief, and Other Provisions." 123 Stat. 115.

17. ARRA and its BABs program created a money-mandating obligation because Congress did not place any limit on the amounts of money the Government would have to pay to issuers of BABs, which the Government subsequently and repeatedly affirmed.

18. Section 5 of ARRA, titled "Emergency Designations," specifies that "[a]ll applicable provisions in this Act are designated as an emergency for purposes of pay-as-you-go principles," thus exempting the money-mandating obligations of ARRA from any required offset in spending or any prohibition on expansion of the federal deficit. 123 Stat. 116.

19. On numerous occasions between 2009 and 2011, Treasury stated that the Government would honor its statutory and contractual obligations to make the full BABs payments mandated by Section 1531.

20. On April 3, 2009, Treasury issued a release which references a 2009 IRS guidance document regarding Build America Bonds and declared that "issuers can begin issuing these bonds with confidence about how these federal payments will be made."

21. A report issued by the Treasury Inspector General for Tax Administration on March 16, 2010 affirmed that subsidies under the Build America Bonds program were "not given a limit" and were "not limited in the total dollar amount that can be issued."

22. On June 3, 2011, the Treasury Inspector General for Tax Administration affirmed that issuers of Build America Bonds would "receive the credit payment from the Federal Government *over the life of the bond*." (emphasis added).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

23. SRP issued a total of $500,000,000 in Build America Bonds prior to January 1, 2011 in reliance on the promises and mandatory payment obligations set forth in Section 1531.

24. The Build America Bonds issued by SRP funded capital investments in projects that provide safe and reliable electric power to over 1,000,000 of SRP's customers. In furtherance of the stated purposes of ARRA, those projects created jobs, promoted economic recovery, and promoted critical infrastructure projects that provide long-term economic benefits to the public.

25. The bonds issued by SRP that are the subject of this case meet all requirements of Build America Bonds under Section 1531. Each is a State or local bond for which interest would otherwise be excludable from gross income under Section 103 of the Internal Revenue Code, each was issued before January 1, 2011, and SRP made an irrevocable election to designate each as a Build America Bond.

26. The Build America Bonds issued by SRP are "qualified bonds" entitled to direct payments in lieu of tax credits because the proceeds of each were used for capital expenditures and SRP made an irrevocable election with respect to each to accept direct payments in lieu of tax credits.

27. SRP satisfied all other requirements and prerequisites for payment set forth in Section 1531, including submitting the required writing to the United States when each periodic interest payment was made on the Build America Bonds it issued.

28.     By issuing each qualified Build America Bond in compliance with Section 1531, SRP intended to, and in fact did, accept the offer made by Section 1531 and completed the contractual performance required by Section 1531.

29.     Between January 2010 and January 2013, Treasury fully performed its statutory and contractual obligations to SRP required by Section 1531 by making direct cash payments to SRP equal to 35 percent of the interest payments made by SRP on their qualified Build America Bonds.

30.     Beginning with the interest payments made by SRP on their qualified Build America Bonds in July 2013 and continuing to the present, Treasury has failed to make direct cash payments to SRP equal to 35 percent of each interest payment made by SRP.

31.     Treasury's failure to make the full payments required under Section 1531 violates its express statutory obligation to make the payments mandated by the statute and its contractual obligations to SRP.

32.     Treasury has stated that it will continue to breach the obligations imposed by Section 1531 by not making the full payments required under Section 1531 through at least September 30, 2030.

33.     As a result of Treasury's continuing violation of its statutory obligations and its contractual duties, SRP has suffered damages, which continue to accrue. SRP's damages to date total over $4.5 million. SRP's damages through September 30, 2030 will total over $9 million.

## **COUNT I**

34.     Plaintiff re-alleges and incorporates the allegations of paragraphs 1-33 as if set forth in full herein.

35. SRP issued $500,000,000 in qualified Build America Bonds to fund various capital investments in its power generation, transmission and distribution systems.

36. SRP's issuance of Build America Bonds provided a significant capital investment in infrastructure that provides a stable, cost-based electric supply to over 1,000,000 of SRP's customers.

37. SRP met all requirements to qualify for direct cash payments in lieu of tax credits in the amount of 35% of the interest it paid on the qualified Build America Bonds it issued under Section 1531.

38. Between January 2010 and January 2013, Treasury made direct cash payments to SRP equal to 35 percent of the interest payments made by SRP on their qualified Build America Bonds.

39. Beginning with the interest payments made by SRP on their qualified Build America Bonds in July 2013 and continuing to the present, Treasury has failed to make direct cash payments to equal to 35 percent of each interest payment made by SRP on their qualified Build America Bonds.

40. Treasury's failure to make the full payments required under Section 1531 constitutes a continuing violation of its express statutory obligations to SRP under Section 1531.

41. Treasury has stated that it will not make the full payments required under Section 1531 through at least September 30, 2030.

42. As a result of Treasury's continuing violation of its statutory obligations SRP has suffered damages presently totaling $4,563,089.88.

43. SRP will suffer damages through September 30, 2030 in the amount of $9,065,327.68.

**II**

44. SRP incorporates herein the allegations of paragraphs 1-43 as if set forth fully herein.

45. By virtue of the provisions of Section 1531, Congress made an offer under which Treasury promised to make direct cash payments in specified amounts to anyone who performed the requirements set forth in Section 1531.

46. By issuing qualified Build America Bonds in compliance with all of the requirements of Section 1531, SRP accepted the offer and fully completed the performance required of it by Section 1531.

47. SRP is entitled to full performance of Treasury's obligation to make direct cash payments to SRP equal to 35 percent of the interest payments made by SRP on their qualified Build America Bonds.

48. Treasury's failure to make the full payments required under Section 1531 constitutes a breach of its contractual obligations to SRP, which is continuing.

49. As a result of Treasury's continuing violation of its contractual obligations to make the full payments due to SRP as a result of the issuance of the qualified Build America Bonds, SRP has suffered damages in the amount of $4,563,089.88 and will suffer further damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully asks this Court to enter judgment in its favor and against Defendant and to:

(a) Award Plaintiffs monetary relief in amounts to be proven at trial, which currently total $4,563,089.88.

(b) Award Plaintiff such costs and attorneys' fees, and additional monetary relief, including interest, as is available under applicable law, including but not limited to those available under the Equal Access to Justice Act, 28 U.S.C. § 2412.

(c) Award such other and further relief as the Court deems just and proper.

June 29, 2021                                             /s/                              .
                                                 John C. Hayes, Jr.
                                                 Brian J. Whittaker
                                                 NIXON PEABODY LLP
                                                 799 9th Street, NW, Suite 500
                                                 Washington, D.C. 20001
                                                 Tel: (202) 585-8345
                                                 Fax: (202) 585-8080
                                                 jhayes@nixonpeabody.com
                                                 bwhittaker@nixonpeabody.com